A05A0830. DEBORD v. THE STATE.
(622 SE2d 460)

BARNES, Judge.

Following a bench trial and subsequent denial of his motion for new trial, Grady Dwight Debord appeals from his conviction for possession of methamphetamine contending that the trial court erred in denying his motion to suppress. For the reasons that follow, we reverse.

> When reviewing a trial court's decision on a motion to suppress, this court's responsibility is to ensure that there was a substantial basis for the decision. The evidence is construed most favorably to uphold the findings and judgment, and the trial court's findings on disputed facts and credibility are adopted unless they are clearly erroneous.

---

[13] *Hall v. State*, 235 Ga. App. 44, 46-47 (4) (508 SE2d 703) (1998).
[14] *Huguley v. State*, 242 Ga. App. 645, 649 (1) (b) (529 SE2d 915) (2000).

(Citation and footnote omitted.) *Sikes v. State*, 247 Ga. App. 855, 856 (1) (545 SE2d 73) (2001). Here, the only evidence at the motion to suppress was adduced from the testimony of the two officers on the scene; Debord did not testify. Consequently, "where the evidence is uncontroverted and no question regarding the credibility of witnesses is presented, the trial court's application of the law to undisputed facts is subject to de novo appellate review." *Vansant v. State*, 264 Ga. 319, 320 (1) (443 SE2d 474) (1994).

So construed, testimony at the motion to suppress hearing reveals that a Cherokee County police officer stopped a vehicle in which Debord was a passenger for a defective tag light. The officer asked the driver and Debord for identification, and determined that the driver had an outstanding warrant. The officer testified that he recognized Debord from a previous narcotics violation. Another officer arrived as backup, and as the first officer arrested the driver, the second officer questioned Debord.

The responding officer testified that he asked Debord to step out of the vehicle and then asked him whether he had any weapons. He said that although Debord said that he was not armed, the officer noticed a pocketknife "clipped to his pants pocket." The officer testified that he pointed the knife out to Debord and "removed that pocketknife as security to myself before I conducted a *Terry* frisk." The officer "discovered in [Debord's] top, left breast pocket of his shirt, based on [his] training and knowledge and experience, a marijuana pipe." Debord was arrested for possession of the marijuana pipe, and during the search incident to arrest, a wrapper containing methamphetamine was recovered.

Debord argued that there was no justification for the initial pat-down search, and that even if the frisk was permissible, reaching into his pockets to retrieve the pipe was not. The State argued that the officer plainly felt "what he can identify, based on his training and experience, as a marijuana pipe. He then goes into the pocket, pulls it out and, indeed, it is that pipe."

In denying the motion to suppress, the trial court held that Debord's obvious inebriation required

> detention and inquiry before they would authorize him to either leave or they arrest him. So, I think, even without danger... they have a right to do a *Terry* frisk for their safety. However, the evidence is undisputed that they did see a knife. Now, I know there's not one here now, and that's certainly a matter that the Court can consider, but the evidence is undisputed that they did see a knife. The evidence is undisputed that he does have a history of drug violations. The evidence is undisputed that he had been

drinking. All of these make it, in my opinion, a sufficient basis for the officers to conduct a *Terry* frisk.

We do not agree.

> A reasonable search for weapons for the protection of the police officer, is permitted where he has reason to believe that he is dealing with an armed and dangerous individual, regardless of whether he has probable cause to arrest the individual for a crime. The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger. *Terry v. Ohio*, 392 U. S. 1, 27 (88 SC 1868, 20 LE2d 889) (1968).

(Citations and punctuation omitted.) *Mashburn v. State*, 186 Ga. App. 488, 489 (367 SE2d 881) (1988). "Implicit in this rule of law . . . is the prerequisite determination that the officer actually concluded that the suspect was armed or a threat to personal safety and the officer can articulate a basis for his conclusion so that a *Terry* protective pat-down would not be unreasonable in the given set of circumstances." (Citation and footnote omitted.) *Edgell v. State*, 253 Ga. App. 775, 777 (560 SE2d 532) (2002).

Here, the officer testified that he requested that Debord step out of the vehicle, and "asked him if he had any weapons on him before I conducted a *Terry* frisk on him." He testified that he spotted a pocketknife clipped to Debord's pants, removed it and conducted the pat-down. He said that he subsequently discovered the marijuana pipe. Although the officer inventoried the contents of Debord's pockets on the videotape introduced at the hearing, the knife was not included in the items. The officer later stated that his basis for conducting the pat-down was that

> Debord obviously could not drive that vehicle away from the scene. His license was suspended. He had been drinking alcohol. Either he was going to walk or I was going to end up transporting him. I wasn't going to stand out there on the side of the road and talk to him without conducting a *Terry* frisk on him to make sure he didn't have any weapons on him to put me in danger.

We have reviewed the videotape of the encounter and find the memorialized events substantially at odds with the incident as recalled by the officer. The recording indicates that after Debord

stepped out of the vehicle, the officer shined his flashlight across Debord's person, pointed at something and the men appeared to have a conversation. As the men talked, the officer continued to shine his flashlight in a sweeping motion across Debord's clothing, and after approximately 30 seconds, Debord turned and placed his hands against the truck. Although the view is partially obstructed, the officer appeared to reach into several of Debord's pockets, including the rear and side pockets of his pants and jacket. He then turned Debord slightly forward, searched the pockets of his shirt and jacket and retrieved several items which he placed on the back of the truck. Approximately three minutes after the start of the encounter, the officer looked at the camera and stated that "we have a marijuana pipe."

While the officer's initial contact with Debord fell within the first level of police-citizen encounters and required no suspicion of criminal activity, *State v. Folk*, 238 Ga. App. 206, 207 (521 SE2d 194) (1999), the situation escalated to a second-tier encounter involving a seizure. When the officer had Debord place his hands on the truck and began to frisk him, a seizure had occurred, and articulable suspicion of criminal activity must be present. See *State v. Taylor*, 226 Ga. App. 690, 691 (487 SE2d 454) (1997).

Although the officer testified that he performed the pat-down of Debord because he saw the pocketknife and for his safety, the evidence appears to belie any supposed threat. Even if the officer saw a pocketknife, and did in fact retrieve it prior to the pat-down (an act not reflected on the videotape), the intrusive pocket-by-pocket search reflected on the recording occurred prior to the discovery of the pipe, and far exceeded any constitutionally acceptable frisk for weapons.

The justification for a pat-down search is officer safety, thus the search must "be confined in scope to an intrusion reasonably designed to discover guns, knives, clubs, or other hidden instruments for the assault of the police officer." (Citation omitted.) *State v. Jourdan*, 264 Ga. App. 118, 122 (2) (589 SE2d 682) (2003). An exception to the rule lies "in only two instances: (1) if he comes upon something that feels like a weapon, or (2) if he feels an object whose contour or mass makes its identity as contraband immediately apparent." (Footnotes omitted.) *Howard v. State*, 253 Ga. App. 158, 160 (558 SE2d 745) (2002). Here, the evidence indicates that the marijuana pipe was discovered only after the officer had begun his pocket-by-pocket intrusion.

Based on the officer's testimony that Debord's actions were neither aggressive nor threatening, that he had fully complied with the officer's instructions, and the officer's failure to correlate the presence of a pocketknife with any criminal activity, we find that the officer lacked a reasonable suspicion that Debord was, or was about to be, engaged in criminal activity.

The safety of officers is of extreme importance to this Court. Nonetheless, our constitution requires an officer to provide evidence to show that an act alleged to be performed for his safety was actually performed for that purpose in conformance with the requisite standards of *Terry*. Without appropriate evidence that the officer had a reasonable basis for concluding that [Debord] was armed or was otherwise a threat to his personal safety, the intrusive search of the type in this case is unconstitutional.

(Citation and punctuation omitted.) *Edgell v. State*, supra at 778.

The officer testified that he would only have intruded into Debord's pocket with express consent, the officer admitted that he could not remember if Debord had consented, but "if I reached into his pocket, it's because he gave me permission to reach into his pocket." However, "consent that is the product of an illegal detention is ineffectual." (Footnote omitted.) *Eaves v. State of Ga.*, 236 Ga. App. 279, 280 (2) (511 SE2d 621) (1999).

Likewise, we also find that the trial court erred in finding that the discovery of the pipe and methamphetamine was inevitable. In noting that the officer testified that he had spotted an open container of alcohol in the car at some point during the encounter, the trial court held that,

it's inevitable that they would, in fact, have found that alcohol container. There's no way around that. So any way you look at it, there was a basis for a custodial arrest. With a basis for a custodial arrest, there's a basis for finding this pipe in the alcohol context, and if you find the pipe, then there's a secondary basis for custodial arrest, and any search thereafter is legal and valid.

"When the evidence in question would inevitably (or ultimately) have been discovered without reference to the police error or misconduct, the evidence is admissible." (Citation and punctuation omitted.) *Gearin v. State of Ga.*, 218 Ga. App. 390, 391 (1) (461 SE2d 562) (1995) (methamphetamine in defendant's pocket would have been inevitably discovered regardless of the alleged invalid consent search of the pocket because the defendant was being arrested for DUI and would have been searched incident to arrest); see also *Barnett v. State*, 204 Ga. App. 491, 493 (1) (b) (420 SE2d 43) (1992) (drugs would have been inevitably discovered because police had probable cause to locate and seize drugs due to defendant's unsolicited comment that drugs were hidden inside a seat back and the observation by officers of a suspicious slit cut into the seat back).

In this case, Debord was not arrested for the offense. Moreover, violation of the open container law, OCGA § 40-6-253, is governed by its own penalty provision, which provides that "[a]ny person who violates this Code section is subject to a fine not to exceed $200.00." OCGA § 40-6-253 (c). Thus, as Debord was only arrested after the officer searched his pockets and found the pipe, discovery of the contraband was not inevitable based on these facts.

*Judgment reversed. Ruffin, C. J., and Johnson, P. J., concur.*

DECIDED OCTOBER 26, 2005.

*Joe W. Hendricks, Jr., Mathew A. Baker*, for appellant.
*Garry T. Moss, District Attorney, Thomas J. Bowers III, Assistant District Attorney*, for appellee.