## A07A0064. BROWN v. THE STATE.
(641 SE2d 551)

PHIPPS, Judge.

Nepolean Brown appeals his convictions of possession of marijuana with intent to distribute and possession of marijuana with intent to distribute within 1,000 feet of a housing project. He contends that the trial court erred in denying his motion to suppress. Finding no error in the trial court's denial of that motion, we affirm.

> In reviewing the trial court's ruling on a motion to suppress, we follow three principles: First, when a motion to suppress is heard by the trial judge, that judge sits as the trier of facts. The trial judge hears the evidence, and his findings based upon conflicting evidence are analogous to the verdict of a jury and should not be disturbed by a reviewing court if there is any evidence to support (them). Second, the trial court's decision with regard to questions of fact and credibility must be accepted unless clearly erroneous. Third, the reviewing court must construe the evidence most favorably to the upholding of the trial court's findings and judgment.[1]

Therefore, "[a]lthough the evidence adduced at a motion to suppress hearing may be subject to varying interpretations, we must construe it most favorably to the upholding of the trial court's findings and judgment."[2]

At the hearing on the motion to suppress, City of Monroe Police Officer Barry Finley testified that on January 18, 2006, he was looking for an individual suspected of having shot someone a couple of days earlier. Another officer informed Finley that some men were loading furniture into a moving van at the suspect's address. Believing that the suspect was attempting to leave town, Finley and yet another officer went to the address. Upon exiting his patrol car, Finley observed several men standing in the back of the van; and he detected a strong odor which, through his years of law enforcement

---

[1] *State v. Merit*, 262 Ga. App. 687 (586 SE2d 393) (2003) (footnote omitted).
[2] *State v. Varner*, 239 Ga. App. 347 (521 SE2d 247) (1999) (citation omitted).

experience, he recognized as burning marijuana. He repeatedly asked who was smoking the marijuana, but no one responded.

Out of concern for his and the other officer's safety, he decided to pat each of the men down for weapons. When asked why he was concerned for his safety, Finley gave a two-part explanation. First, he testified, "Most of the time when you have drugs or any type of drugs or marijuana, weapons and drugs they go together usually, people do tote some type of weapon with them when they have drugs." Finley further explained that "also we were looking for a guy that just shot a man two days [earlier]. . . . [A]t that time, I didn't know if [the suspect] was in that van at that time either."

When Finley asked the men to put their hands up against the wall of the van, they complied. While frisking Brown, Finley felt something in his pocket that seemed like a baggie with lumps in it. When Finley asked Brown what he had in his pocket, Brown replied that it was marijuana. Finley then reached into Brown's pocket, removed a large baggie containing 12 smaller baggies in which marijuana had been packaged, and arrested him.

Brown argues that Finley was not authorized to frisk him for weapons because Finley had no reason to believe that he was armed and dangerous. As in *Wilson v. State*,[3] this argument fails. In *Wilson*, police officers received a tip that a man was selling cocaine in an area where a large number of drug deals took place. The investigating officer went to that area and saw a group of people sharing a pipe to smoke suspected crack cocaine. The officer saw Nancy Wilson in the group, although he did not see her in possession of the pipe. After the group scattered, Wilson was stopped and searched.

As recognized in *Wilson*,

[a] police officer is authorized to make a brief, investigatory detention of an individual where the intrusion can be justified by specific, articulable facts giving rise to a reasonable suspicion of criminal conduct. What is demanded of the police officer is a founded suspicion, some necessary basis from which the court can determine that the detention was not arbitrary or harassing.[4]

We found the brief, investigatory stop of Wilson authorized and not arbitrary or harassing. We held that the officers were also authorized to conduct a pat-down search of her to determine whether she was armed because "[i]n this state, a *Terry* pat-down search is authorized

---

[3] 210 Ga. App. 886 (437 SE2d 867) (1993) (physical precedent only).
[4] Id. at 886-887 (citation and punctuation omitted).

when the officer reasonably believes that it is necessary to protect him from attack[,]" and "[i]t is not unreasonable for officers to anticipate that those who are suspected of involvement in the drug trade might be armed."[5]

> (A) law enforcement officer, for his own protection and safety, may conduct a patdown to find weapons that he reasonably believes or suspects are then in the possession of the person he has accosted. A policeman making a reasonable investigatory stop should not be denied the opportunity to protect himself from attack by a hostile suspect. The purpose of this limited search is to allow the officer to pursue his investigation without fear of violence. . . .[6]

"The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger."[7] "[T]he Fourth Amendment protects a person's right to be secure against unreasonable searches and seizures. The touchstone of the Fourth Amendment is reasonableness. Reasonableness, in turn, is measured in objective terms by examining the totality of the circumstances."[8]

*Clark v. State*,[9] relied on by Brown, is distinguishable from this case. In *Clark*, police officers had a warrant to search the premises of a bar because a reliable informant who had been in the bar had seen the bar owners and bartender in possession of illegal drugs. Upon entering the bar, police advised the numerous patrons of the bar that they were going to conduct a pat-down search of each of them for weapons. Citing *Ybarra v. Illinois*,[10] we held that " '[t]he "narrow scope" of the *Terry* exception does not permit a frisk for weapons on less than reasonable belief or suspicion directed at the person to be frisked, even though that person happens to be on premises where an authorized narcotics search is taking place.' "[11] We thus concluded that the pat-down search of one of the patrons of the bar was not

---

[5] Id. at 887 (citations and punctuation omitted); see *Terry v. Ohio*, 392 U. S. 1 (88 SC 1868, 20 LE2d 889) (1968).

[6] *Jones v. State*, 237 Ga. App. 847, 849 (2) (515 SE2d 841) (1999) (citation omitted).

[7] *Milby v. State*, 256 Ga. App. 429, 430 (569 SE2d 256) (2002) (citations omitted).

[8] *State v. Benjamin*, 266 Ga. App. 205, 207 (2) (596 SE2d 623) (2004) (citations and punctuation omitted).

[9] 235 Ga. App. 569 (510 SE2d 319) (1998).

[10] 444 U. S. 85 (100 SC 338, 62 LE2d 238) (1979).

[11] *Clark v. State*, supra, 235 Ga. App. at 572 (2).

authorized, because the officers lacked any particularized suspicion that he, unlike other bar patrons, was armed and dangerous.[12]

Accordingly, in *State v. Varner*,[13] we affirmed the trial court's grant of the defendant's motion to suppress, where he happened to be present in a residence in which narcotics agents were executing a search warrant for illegal drugs; but he, unlike another person, was not named in the warrant, and the searching officer was unable to articulate any particular facts from which the officer could reasonably infer that he was armed and dangerous. Likewise in *State v. Charles*,[14] we affirmed the trial court's grant of the defendant's motion to suppress, where the trial court rejected police officers' claim that a protective sweep of a motel room was authorized out of concern for their safety; the officers had gone to the room about complaints of noise and, upon arrival, they had detected only the smell of marijuana smoke (merely suggesting that marijuana had been present in the past) as opposed to the odor of burning marijuana (suggesting that marijuana was still present).

In *Kinder v. State*,[15] however, where a police officer was executing a search warrant for drugs at a residence, we upheld the officer's pat-down search of a visitor at the residence. We recognized that " '(w)hen executing a search warrant, it is illegal to search a person not named in the warrant but found on the premises to be searched, without independent justification for a personal search.' "[16] We, however, upheld the officer's pat-down of Kinder because "we have consistently held that '(i)t is not unreasonable for officers to anticipate that those who are suspected of involvement in the drug trade might be armed.' "[17] We rejected Kinder's argument that the legal scope of the pat-down was exceeded because the item seized from his pocket was not immediately identifiable as contraband. We held that the "plain feel" doctrine made seizure of the contraband lawful because the officer, on the basis of his law enforcement experience, was able to identify the object in Kinder's pocket as apparent contraband merely by feeling it.

Here, as in *Wilson*, the officer confronted a group of individuals and, unlike the officers in *Charles*, undisputably detected the odor of burning marijuana. Unlike the situation in cases such as *Ybarra*,

---

[12] Id. at 571-574 (2) (a)-(c); see also *Edgell v. State*, 253 Ga. App. 775 (560 SE2d 532) (2002) (police officer not authorized to engage in automatic pat-down of passenger asked to exit a stopped vehicle).

[13] Supra.

[14] 264 Ga. App. 874 (592 SE2d 518) (2003).

[15] 269 Ga. App. 99 (603 SE2d 496) (2004).

[16] Id. (footnote omitted).

[17] Id. (footnote omitted).

*Clark*, and *Varner*, the trained officer thus had probable cause to believe that one or more of the men was using an illegal drug,[18] but he was unable to ascertain the identity of the offending party or parties without investigation. Moreover, he had gone to the scene to apprehend the suspected perpetrator of an aggravated assault who he thought might be fleeing town. Brown and the other men whom the officer confronted were loading furniture into a van in front of the suspect's residence. The officer reasonably believed that one of them could have been the aggravated assault suspect. These circumstances provided specific, articulable facts that reasonably justified a brief, investigatory detention of the men the officer encountered. And under the circumstances, we cannot say that the trial court's acceptance of the officer's claim that his pat-down of the men was needed for his safety was clearly erroneous.[19] During the authorized pat-down, the officer felt suspected contraband. Once Brown admitted that it in fact was contraband, the officer was authorized to remove it from his pocket as in *Kinder*.[20]

*Judgment affirmed. Johnson, P. J., and Mikell, J., concur.*

DECIDED DECEMBER 15, 2006 —
RECONSIDERATION DENIED JANUARY 11, 2007 — 

*Charles E. W. Barrow, James C. Bonner, Jr.*, for appellant.
*W. Kendall Wynne, Jr., District Attorney, Candace K. Slezak, Assistant District Attorney*, for appellee.

---

[18] See *Williams v. State*, 273 Ga. App. 637, 638-639 (1) (615 SE2d 789) (2005).

[19] See generally *State v. Charles*, supra, 264 Ga. App. at 876 (1).

[20] Compare *Debord v. State*, 276 Ga. App. 110 (622 SE2d 460) (2005) (although officer testified that defendant gave him permission to reach into his pocket during pat-down, consent was ineffectual as product of illegal detention); *Wilson v. State*, 272 Ga. App. 291 (612 SE2d 311) (2005) (even assuming that pat-down search was lawful, officer not justified in reaching into defendant's pocket to retrieve rolling papers).