## A08A2365. CELESTIN v. THE STATE.
(675 SE2d 480)

MIKELL, Judge.

Gerard Claude Celestin was convicted of trafficking in cocaine and was sentenced to twenty-five years in prison and five years on probation. On appeal, he contends that the trial court erred in denying his motion for new trial on several grounds, including ineffective assistance of counsel, the admission of illegally obtained evidence, and the erroneous admission of similar transaction evidence. Celestin also argues that the verdict contravened the weight of the evidence and that the trial court erred by failing to charge the jury on the lesser included offense of possession of cocaine with intent to distribute. Finding no reversible error, we affirm.

1. Celestin argues that the trial court erred by denying his motion for new trial because the verdict was strongly against the weight of the evidence.[1] But this power rests with the trial court alone.[2] This Court does not have the authority to grant a new trial when the evidence preponderates heavily against the verdict.[3] Our review is limited to determining, as a matter of law, whether the

---

[27] (Citation omitted.) *Brown v. State*, 268 Ga. 354, 360 (8) (490 SE2d 75) (1997).

[1] See OCGA § 5-5-21.

[2] *Drake v. State*, 241 Ga. 583, 585 (1) (247 SE2d 57) (1978); *Dixon v. State*, 192 Ga. App. 845, 846 (386 SE2d 719) (1989) (the trial judge alone has discretion to grant a new trial where the defendant claims the verdict is against the weight of the evidence).

[3] *Dixon*, supra.

record contains sufficient evidence to support the verdict.[4] In so doing, we construe the evidence in the light most favorable to the verdict.[5] We do not weigh the evidence or resolve issues of witness credibility, but merely determine whether the evidence was sufficient to find the defendant guilty beyond a reasonable doubt.[6] "As long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the [s]tate's case, the jury's verdict will be upheld."[7]

Properly viewed, the evidence reveals that on May 10, 2006, Larry Bracken, a narcotics investigator for the Richmond County Sheriff's Office, was informed by a reliable confidential informant ("CI"), who was a cooperating defendant in another case, that Celestin was in room 109 of the Best Value Inn in Augusta carrying a large amount of crack cocaine. Bracken proceeded to the motel around noon to try and locate Celestin. After conducting surveillance on the room, Bracken did not see Celestin. Bracken eventually walked past the room and smelled burning marijuana, so he asked the maintenance man, Ronnie Butler, to knock on the door. Celestin opened the door smoking a marijuana "blunt." Bracken handcuffed Celestin and then "cleared" the room, checking for weapons and potential suspects. Bracken observed a box of baking powder and a digital scale on the counter outside the bathroom, next to the sink. Both items were introduced into evidence. At that point, Bracken stationed other investigators with Celestin and left in order to obtain a search warrant. Sergeant Mathue Phares remained in the room with Celestin and attested to the odor of smoked marijuana in the room. After securing the warrant, Bracken executed the search at 2:28 p.m. He discovered two bags of powder cocaine in a jacket; the bags weighed fifty-five grams and fourteen grams, respectively. Bracken also seized $524 in cash and a suitcase containing Celestin's belongings, including mail addressed to him. Bracken found a copy of a document showing that the room was registered to a man named Teion Simmons. The registry showed an Augusta address for Simmons, but Bracken was never able to locate him.

Narcotics investigator Alonzo Bell established the chain of custody of the contraband. He transported the evidence to the Georgia Bureau of Investigation (GBI) Crime Lab, where it was analyzed by Shelly Davis, a forensic chemist. Davis testified that she tested the solid material in one of the bags, and it was positive for

---

[4] *Jones v. State*, 219 Ga. App. 780 (1) (466 SE2d 667) (1996).

[5] *Gearin v. State*, 255 Ga. App. 329, 330 (565 SE2d 540) (2002).

[6] Id.; see *Pruitt v. State*, 279 Ga. 140, 141 (1) (611 SE2d 47) (2005).

[7] (Citation and punctuation omitted.) *Miller v. State*, 273 Ga. 831, 832 (546 SE2d 524) (2001).

cocaine, with a purity of 79.9 percent. She also testified that the combined weight of the two bags was 71.99 grams.

The next witness testified to a similar transaction that occurred on November 15, 2004, in Greene County. Celestin was stopped for failure to maintain his lane while driving a rental car on Interstate 20. He told the officer he was pulling hairs out of his face with tweezers. Celestin was wearing baggy clothes and a long jacket, and powder cocaine was discovered in his pants during a pat-down search. The cocaine was wrapped in duct tape. Expert analysis revealed that the cocaine weighed 248.33 grams, with a purity of 83.3 percent. A videotape of the traffic stop was played for the jury, and it was established at the hearing on Celestin's motion for new trial that he was wearing the same jacket at that traffic stop as the one in which the cocaine was discovered in the case at bar.

As relevant to this case, the offense of trafficking in cocaine consists of knowingly possessing 28 grams or more of cocaine.[8]

> A person who knowingly has direct physical control over a thing at a given time is in actual possession of it. A person who . . . knowingly has both the power and the intention at a given time to exercise dominion or control over a thing is then in constructive possession of it.[9]

Celestin claims, inter alia, that the state failed to establish his knowing possession, either actual or constructive, because there was no proof that the jacket in which the cocaine was found belonged to him. He contends that he cannot be convicted on evidence of mere proximity to the cocaine. "True, mere presence in the vicinity of contraband alone does not establish constructive possession."[10] But the evidence recounted above shows far more than mere proximity to the cocaine. Celestin was alone in the room when he heard the knock on the door; no one entered or exited the room prior to the search. Paraphernalia commonly used to prepare crack cocaine was openly displayed on the counter, and the jacket in which the cocaine was found was the same jacket Celestin wore when arrested in 2004. "It has long been the law that knowledge may be proved by facts and circumstances from which a jury could reasonably infer that a defendant knowingly possessed contraband."[11] The evidence authorized the jury to conclude beyond a reasonable doubt that Celestin

---

[8] OCGA § 16-13-31 (a) (1).

[9] (Punctuation and footnote omitted.) *Herberman v. State*, 287 Ga. App. 635, 637 (1) (653 SE2d 74) (2007).

[10] (Citation omitted.) *Cooper v. State*, 237 Ga. App. 837, 838 (2) (517 SE2d 85) (1999).

[11] (Citation omitted.) *Fernandez v. State*, 275 Ga. App. 151, 154 (2) (619 SE2d 821) (2005).

knowingly possessed the cocaine.[12]

2. Celestin argues that the trial court erred in denying his motion for new trial on the ground of ineffective assistance of counsel.

> In order to establish ineffectiveness of trial counsel, appellant must show both that counsel's performance was deficient and that the deficient performance prejudiced the defense. There is a strong presumption that the performance of trial counsel falls within the wide range of reasonable professional assistance. In reviewing a lower court's determination of a claim of ineffective assistance of counsel, we give deference to the trial court's factual findings, which are upheld on appeal unless clearly erroneous; however, we review the lower court's legal conclusions de novo.[13]

"The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result."[14]

Guided by these precepts, we review Celestin's claim that his trial attorney rendered ineffective assistance by failing to adequately investigate the facts, witnesses, and evidence used against him. Specifically, Celestin argues that trial counsel should have introduced his paycheck for $457.23 to explain why he had $524 in cash when he was arrested; that counsel should have investigated the "time line" of events that day to show that Celestin arrived in Augusta too late for the events to have unfolded in the manner testified to by Bracken; and that trial counsel should have investigated Phares's disciplinary history and more thoroughly interviewed Butler, the maintenance man.

At the outset, we note that Celestin's brief omits any reference to the fact that on July 11, 2006, before trial counsel was appointed, Celestin filed a pro se motion for speedy trial. On August 9, Celestin filed a request that his case be placed on the trial docket, referencing his speedy trial demand. Trial counsel was appointed on August 16, and the trial began on Monday, August 21, 2006. At the hearing on the motion for new trial, counsel testified that the speedy trial demand "severely limited" the amount of time he had to investigate

---

[12] *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

[13] (Citation and punctuation omitted.) *Allen v. State*, 286 Ga. App. 469, 471 (2) (649 SE2d 583) (2007).

[14] (Citation and punctuation omitted.) Id. at 474 (2) (a).

YALE LAW LIBRARY

the matters about which Celestin now complains. Counsel testified that he discussed the demand with Celestin, who did not wish to withdraw it because he did not want to remain in jail any longer than necessary. When Celestin asked counsel if he was ready for trial, counsel replied that the defense would be limited in certain areas, but based on the defenses they had discussed, counsel felt prepared to go forward.

Having declined to withdraw his speedy trial demand, Celestin cannot now complain that his attorney proceeded to trial without conducting a lengthier investigation of his case. Counsel's strategic decision to proceed to trial, made after consultation with Celestin, is not subject to second-guessing by this Court.[15] We do not judge counsel's strategic decisions "by hindsight, result, or how another lawyer may have conducted the defense."[16] Counsel testified that he and Celestin fully discussed trial strategy, including the timing issue, and decided that the best defense was to argue that the state failed to prove its case. "Counsel's decision as to which theory of defense to pursue is a matter of strategy and tactics; and, as a general rule, matters of tactics and strategy, whether wise or unwise, do not amount to ineffective assistance of counsel."[17]

Moreover, Celestin has not shown that further investigation would have changed the outcome of his case. Trial counsel testified that he did not introduce the paycheck into evidence because that would have required placing Celestin on the stand. And although counsel was unaware that Phares was under investigation at the time of trial concerning a relationship with a CI, there is no evidence that Phares had been convicted of any crime at that time, so he could not have been impeached with evidence of his disciplinary history. "[I]nstances of specific misconduct may not be used to impeach a witness' character or veracity unless the misconduct has resulted in the conviction of a crime involving moral turpitude."[18] And Celestin's claim that his trial counsel was ineffective because he insufficiently interviewed Butler is groundless. Although trial counsel testified that Butler's testimony differed slightly from the account of events that he had relayed to counsel before trial, Celestin has not shown that any further interview of this witness, or additional cross-examination, would have discredited him. In any event, tactical

---

[15] *Hill v. State*, 251 Ga. App. 437, 440 (3) (a) (554 SE2d 579) (2001).

[16] (Punctuation and footnote omitted.) *Worthman v. State*, 266 Ga. App. 208, 213 (5) (596 SE2d 643) (2004).

[17] (Citation and punctuation omitted.) *Milliken v. State*, 230 Ga. App. 810, 812 (2) (b) (498 SE2d 127) (1998).

[18] (Citation and punctuation omitted.) *Allen v. State*, 275 Ga. 64, 68 (3) (561 SE2d 397) (2002).

decisions, including decisions as to cross-examination of witnesses, "provide no grounds for reversal unless they are so patently unreasonable that no competent attorney would have chosen them."[19] Celestin has not made this showing.

Finally, trial counsel's testimony at the hearing on Celestin's motion for new trial authorized the trial court to find that he was an experienced criminal defense lawyer whose pretrial consultations with Celestin and trial preparation were sufficient to satisfy his constitutional duty to his client.[20] "Given trial counsel's experience and his conduct in general in defending [Celestin], we find that the trial court's conclusion that [Celestin] had been afforded effective assistance of counsel was not clearly erroneous."[21]

3. Celestin argues that the trial court erred in denying his motion for new trial based on the erroneous admission of illegally seized evidence. Specifically, he contends that his motion to suppress should have been granted. We disagree.

In reviewing the trial court's denial of a motion to suppress, we accept the trial court's decisions with regard to questions of fact and credibility of witnesses unless they are clearly erroneous,[22] and we construe the evidence most favorably to the trial court's findings and judgment.[23] The trial judge sits as factfinder, and his findings will not be disturbed if there is any evidence to support them.[24] Finally, on appeal, "we consider all the evidence of record, including evidence introduced at trial."[25]

The evidence adduced on this issue shows that Bracken smelled burning marijuana emanating from Celestin's room; that Butler, the maintenance man, knocked on Celestin's door at Bracken's request; and that Celestin opened the motel room door smoking a marijuana "blunt." Bracken handcuffed Celestin, and then cleared the room by checking for weapons and looking in the bathroom to see if someone might be hiding there. When he walked around the back corner of the room, he saw a digital scale and baking powder on the counter where the sink was located. Bracken asked Celestin for permission to search the room. Celestin stated that the room was not his and refused, so Bracken obtained a search warrant. The trial court

---

[19] (Punctuation and footnote omitted.) *Serrate v. State*, 268 Ga. App. 276, 278 (2) (c) (601 SE2d 766) (2004).

[20] See *Head v. State*, 288 Ga. App. 205, 207 (653 SE2d 540) (2007).

[21] *Timberlake v. State*, 200 Ga. App. 64, 69 (5) (406 SE2d 537) (1991). Accord *Head*, supra at 208 (2).

[22] See *Brown v. State*, 283 Ga. App. 250 (641 SE2d 551) (2006).

[23] Id.

[24] Id.

[25] (Citations omitted.) *Serrano v. State*, 291 Ga. App. 500, 501 (662 SE2d 280) (2008).

concluded that sufficient probable cause existed for the issuance of the warrant and the subsequent search of the motel room and seizure of the contraband. The trial court denied Celestin's motion to suppress and motion for new trial on this issue.

(a) Celestin argues that the warrantless intrusion into the motel room was not justified by exigent circumstances. We disagree. First, pretermitting whether Celestin had a reasonable expectation of privacy in a motel room that he had occupied for only a few hours,[26] neither Butler's knock on the door nor Bracken's presence in the corridor implicated the Fourth Amendment.[27] Thereafter, Bracken was "rightfully standing before the open doorway of the motel room for purposes of investigation" when he saw Celestin with contraband.[28] Observing Celestin smoking marijuana created an exigency that justified the officer's warrantless intrusion.[29] "A classic example of exigent circumstances is the likelihood that contraband is in danger of immediate destruction."[30] Bracken was entitled under the exigency doctrine to enter the room to prevent the further destruction of the contraband.[31]

(b) At trial, Bracken testified that after he handcuffed Celestin in the room, he conducted a "protective sweep" for his safety. Celestin argues that the protective sweep was unauthorized and mandated the suppression of the evidence seized after the warrant was obtained. We disagree.

A protective sweep is "a search . . . limited to a sweep to ensure officer safety by detecting the presence of other occupants."[32] Contrary to Celestin's argument, "[t]he fact that the sweep was not performed incident to an arrest does not render it invalid under the

---

[26] Compare *Smith v. State*, 284 Ga. 17, 21 (3) (663 SE2d 142) (2008) (casual visitor, as opposed to an overnight guest, has no expectation of privacy in motel room rented to another) with *Snider v. State*, 292 Ga. App. 180, 182 (663 SE2d 805) (2008) (defendant who occupied hotel room as an overnight guest had a constitutionally protected reasonable expectation of privacy in the room).

[27] See *State v. Schwartz*, 261 Ga. App. 742, 744 (1), n. 4 (583 SE2d 573) (2003) ("police may walk to the door of a residence on the same route as would any guest, deliveryman, postal employee, or other caller") (citation and punctuation omitted).

[28] (Citation and punctuation omitted.) *Pickens v. State*, 225 Ga. App. 792, 795 (1) (b) (484 SE2d 731) (1997).

[29] *State v. Venzen*, 286 Ga. App. 597, 599 (1) (649 SE2d 851) (2007) (exigent circumstances authorized officers to enter residence once defendant opened the door with contraband in hand).

[30] (Footnote omitted.) *Land v. State of Ga.*, 265 Ga. App. 859, 861 (1) (595 SE2d 540) (2004). Compare *Welchel v. State*, 255 Ga. App. 556, 559 (565 SE2d 870) (2002) (no exigent circumstances justified warrantless entry into motel room where no evidence showed that contraband was in danger of immediate destruction).

[31] *Venzen*, supra.

[32] (Citation omitted.) *Elliot v. State*, 274 Ga. App. 73, 76 (2) (616 SE2d 844) (2005).

Fourth Amendment."[33] Under the circumstances presented here, where the officer testified that he wanted to ensure that no one was hiding in the bathroom, a limited sweep was authorized to secure the room while a search warrant was obtained.[34]

The instant case is distinguishable from *State v. Charles*,[35] in which we affirmed the trial court's grant of a motion to suppress. The trial court rejected the police officers' claim that a protective sweep of a motel room was authorized out of concern for their safety; the officers had gone to the room about complaints of noise and, upon arrival, they had detected only the smell of marijuana smoke, as opposed to the odor of burning marijuana.[36] Moreover, the occupants of the room immediately exited the room and were cooperative, and the officers did not indicate that they were concerned for their safety.[37] Here, the officer smelled burning marijuana in the hallway, and his sense was confirmed when Celestin opened the door smoking the substance. The officer also was concerned that someone might be hiding in the bathroom. *Charles* provides no basis for reversal.

(c) Celestin finally argues that the search warrant was defective on its face because the affidavit given by Bracken in support of the warrant does not state with particularity the type of cocaine for which he was searching, or reflect the fact that the CI told Bracken that he would find crack cocaine in the room. Celestin contends that the fact that Bracken found powder cocaine instead of crack cocaine invalidated the warrant. We disagree.

> In determining whether an affidavit provided sufficient probable cause, the issuing magistrate or judge must make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the veracity and basis of knowledge of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a "substantial basis for concluding" that probable cause existed.[38]

---

[33] *Nelson v. State*, 271 Ga. App. 658, 661 (1) (a) (610 SE2d 627) (2005).

[34] Id.

[35] 264 Ga. App. 874 (592 SE2d 518) (2003).

[36] Id. at 874-875.

[37] Id. at 875-876 (1).

[38] (Punctuation and footnote omitted.) *Shivers v. State*, 258 Ga. App. 253, 254 (573 SE2d 494) (2002).

Furthermore,

> [a]n affidavit is presumed valid in the absence of evidence that it contained deliberate falsehoods, was made with reckless disregard for the truth, or that the affiant consciously omitted material facts that, if included, would have indicated the absence of probable cause. As [Celestin] has not produced any such evidence, he has not rebutted the presumption in favor of the affidavit's validity.[39]

In addition, Bracken stated in the affidavit that he observed a scale and baking soda in the motel room, and he testified at the suppression hearing that baking soda is used to turn powder cocaine into crack cocaine. The trial court's finding that probable cause existed for the issuance of the warrant is supported by the evidence; thus, the court did not err in denying either the motion to suppress or the motion for new trial on the ground of illegally obtained evidence.

4. Celestin next argues that the trial court erred in admitting evidence of his 2004 arrest for trafficking in cocaine as a similar transaction because it was not sufficiently similar to the offense for which he was tried. We disagree.

> Before similar transaction evidence can be introduced, the state must make three affirmative showings: First, the state must identify a proper purpose for admitting the transaction; second, the state must show that the accused committed the separate offense; and third, the state must show a sufficient similarity between the independent offense and the crime charged so that proof of the former tends to prove the latter. A decision to admit a similar transaction into evidence is within the discretion of the trial court and will not be disturbed absent an abuse of discretion.[40]

In the case at bar, the trial court conducted the hearing required under Uniform Superior Court Rule 31.3 (B) prior to admitting Celestin's 2004 arrest in Greene County as similar transaction evidence. The state argued that it sought to introduce the evidence to show Celestin's bent of mind and course of conduct. On the issue of the similarity of the transactions, the state argued that in 2004, Celestin was driving a rental car, and in the instant case, he was found in a rented motel room; that the transactions involved the same substance, powder cocaine, with nearly identical purity; and

---

[39] (Footnote omitted.) *Smithson v. State*, 275 Ga. App. 591, 595 (2) (621 SE2d 783) (2005).
[40] (Footnotes omitted.) *Williams v. State*, 273 Ga. App. 213, 216 (2) (614 SE2d 834) (2005).

that in both cases, Celestin possessed an amount far in excess of 28 grams of cocaine. The trial court ruled that the state had shown sufficient similarities between the transactions in order for the 2004 arrest to be admitted at trial.

Although Celestin points out certain differences between the admitted transaction and the one for which he was tried, a crime does not have to be identical to the crime charged to be admissible as a similar transaction.[41]

> The issue of admissibility of extrinsic transactions has never been one of mere similarity. It is, rather, relevance to the issues in the trial of the case. When similar transaction evidence is being introduced to prove motive, intent, or bent of mind, it requires a lesser degree of similarity to meet the test of admissibility than when such evidence is being introduced to prove identity. Similar transaction evidence can be introduced to prove motive [or bent of mind] when there exists some logical connection between the similar transaction evidence and the charged offense so that the similar transaction evidence tends to establish the charged offense.[42]

Despite Celestin's claims, sufficient similarities existed between the prior offense and the crime charged because the prior transaction involved Celestin's possession of a trafficking amount of cocaine and his intent and bent of mind to traffic in cocaine were at issue in the crime charged.[43] The trial court did not abuse its discretion in admitting the similar transaction evidence.

Celestin further argues that the trial court improperly considered the similar transaction evidence, as well as convictions that were reversed on appeal, in aggravation of his sentence. We disagree. Although the state filed a notice of intent to seek recidivist punishment under OCGA § 17-10-7 (a), it did not offer certified copies of any convictions in evidence at sentencing. At the hearing, the state acknowledged that Celestin's two prior convictions for trafficking in

---

[41] *Mullins v. State*, 269 Ga. 157, 158 (2) (496 SE2d 252) (1998) ("The test of admissibility of evidence of other criminal acts by the defendant is not the number of similarities between the two incidents") (citation and punctuation omitted).

[42] (Punctuation and footnote omitted.) *Jordan v. State*, 278 Ga. App. 126, 131 (4) (628 SE2d 221) (2006).

[43] See *Sherrer v. State*, 289 Ga. App. 156, 158 (1) (a) (656 SE2d 258) (2008) ("If the defendant is proven to be the perpetrator of another drug crime and the facts of that crime are sufficiently similar or connected to the facts of the crime charged, the separate crime will be admissible to prove identity, motive, plan, scheme, bent of mind, or course of conduct") (citation and punctuation omitted).

cocaine had been reversed on appeal,[44] but argued that the reversal did not preclude their use in aggravation of sentencing. The trial court imposed a sentence of thirty years, including twenty-five years in prison and five years on probation, plus a $100,000 fine.

Under OCGA § 16-13-31 (a) (1) (A), the punishment for trafficking between twenty-eight grams and 200 grams is a mandatory minimum term of imprisonment of ten years and a fine of $200,000. OCGA § 16-13-31 (h) provides: "Any person who violates any provision of this Code section in regard to trafficking in cocaine . . . shall be punished by imprisonment for not less than five years nor more than 30 years and by a fine not to exceed $1 million." The court's sentence did not exceed the statutory maximum.[45] Moreover, at the hearing on Celestin's motion for new trial, the court reviewed the sentence and clarified for trial counsel that Celestin had not been sentenced as a recidivist.[46] Celestin does not argue on appeal that he was sentenced as a recidivist.[47] Accordingly, this argument presents nothing for review.

5. Celestin finally contends that the trial court erred by failing to charge the jury on the lesser included offense of possession of cocaine with intent to distribute. Celestin submitted a written request to charge on that offense. The state objected, and the trial court refused to give the charge because the amount of cocaine was not in dispute. On appeal, Celestin argues that the charge should have been given because possession with intent to distribute cocaine is a lesser included offense of trafficking in cocaine and there was slight evidence that he committed the lesser included offense.

> The complete rule with regard to giving a defendant's requested charge on a lesser included offense is: where the state's evidence establishes all of the elements of an offense *and there is no evidence raising the lesser offense*, there is no error in failing to give a charge on the lesser offense. Where a case contains some evidence, no matter how slight, that

---

[44] *Celestin v. State*, 255 Ga. App. 792 (567 SE2d 82) (2002); *Celestin v. State*, 737 S2d 652 (Fla. App. 1999) (conviction vacated).

[45] See generally *Jones v. State*, 254 Ga. App. 863, 867 (6) (564 SE2d 220) (2002) (sentences imposed within the statutory limits are not unconstitutional).

[46] Compare *Ramsey v. State*, 218 Ga. App. 692, 693 (4) (462 SE2d 806) (1995) (sentence vacated where trial court's comments showed that prosecutor's unsupported claim that defendant had a prior conviction was considered in determining sentence).

[47] Compare *Williams v. State*, 235 Ga. App. 876, 877 (510 SE2d 848) (1999) (court erred in sentencing defendant as a recidivist because no evidence supported finding that he had prior felony convictions).

shows that the defendant committed a lesser offense, then the court should charge the jury on that offense.[48]

Under OCGA § 16-13-31 (a) (1), a person who knowingly possesses 28 grams or more of cocaine commits the offense of trafficking in cocaine. OCGA § 16-13-30 (b) makes it "unlawful for any person to manufacture, deliver, distribute, dispense, administer, sell, or possess with intent to distribute any controlled substance." The essential difference between the two crimes is the amount of the substance involved, as no amount is specified in OCGA § 16-13-30 (b).[49] In the case at bar, Celestin argues that weight of the cocaine was in dispute because there was a discrepancy between the amount field-tested by Bracken — 70 grams — and the amount as determined by the forensic chemist — 71.99 grams. As both weights far exceed the amount required for trafficking, there is no evidence of the lesser offense. But even if the trial court's failure to give the requested instruction was error, it is highly probable that the error did not contribute to the verdict in light of the overwhelming evidence that Celestin committed the greater offense.[50]

Celestin argues that reversal is mandated by *Lumpkin v. State*.[51] We disagree. The failure to charge the lesser offense in *Lumpkin* was not only error, the error was harmful, because the evidence showed that the defendant possessed exactly 28 grams of cocaine, the minimum amount for a trafficking conviction.[52] That is not the case here. *Lumpkin* is therefore distinguishable.

*Judgment affirmed. Smith, P. J., and Adams, J., concur.*

DECIDED FEBRUARY 18, 2009 —
RECONSIDERATION DENIED MARCH 19, 2009 —

*John R. Taylor*, for appellant.

---

[48] (Citation and punctuation omitted; emphasis in original.) *Edwards v. State*, 264 Ga. 131, 133 (442 SE2d 444) (1994).

[49] See *Bassett v. Lemacks*, 258 Ga. 367, 370 (2) (370 SE2d 146) (1988).

[50] See *Swanger v. State*, 251 Ga. App. 182, 186 (2) (554 SE2d 207) (2001) (failure to charge simple possession harmless); *Adorno v. State*, 236 Ga. App. 588, 592 (4) (512 SE2d 703) (1999) (same).

[51] 245 Ga. App. 627 (538 SE2d 514) (2000).

[52] Id. at 629-630.

*Rebecca A. Wright, District Attorney, Charles R. Sheppard, Assistant District Attorney*, for appellee.