A10A1432. RAMSEY v. THE STATE.
(703 SE2d 339)

DOYLE, Judge.
Damian Ramsey appeals from the trial court's denial of his motion to suppress evidence of marijuana discovered during a pat-down search of his person after the traffic stop of a vehicle in which he was riding. The trial court granted Ramsey a certificate of immediate review, and this Court granted his application for interlocutory appeal. We now affirm for the following reasons.

> While the trial court's findings as to disputed facts in a ruling on a motion to suppress will be reviewed to determine whether the ruling was clearly erroneous, where the evidence is uncontroverted and no question regarding the credibility of witnesses is presented, the trial court's application of the law to undisputed facts is subject to de novo appellate review.[1]

Here, the only witness to testify at the suppression hearing was Corporal Jason Smith of the Twiggs County Sheriff's Department. According to Smith's testimony, he was patrolling a section of I-16 when he noticed a vehicle with what appeared to be illegally tinted windows. Upon stopping the car, Smith "made contact with the

---

[1] (Punctuation omitted.) *Milby v. State*, 256 Ga. App. 429 (569 SE2d 256) (2002).

driver through the passenger side window and advised him [about] the reason why I had pulled him over." Smith immediately "detected a strong odor of burning marijuana." He asked the driver, who is not a party to this appeal, to exit and proceed to the rear of the vehicle, where Smith handcuffed the driver for safety purposes. The driver explained that "they had smoked marijuana in the vehicle earlier that day," and thereafter, Smith called his partner to assist with the stop.

Smith then testified that upon his partner's arrival,

> I got [Ramsey] out of the vehicle. He got the back seat passenger out of the vehicle[,] and we patted them down for weapons[,] [a]t which time I felt a bulge in his watch pocket, if you're familiar with what a watch pocket is. It's most of the time on your right side above your right pocket. . . . It's a little, small pocket. I felt a bulge in it. A lot of time when we feel a bulge . . . any time during a stop like this particular one with the odor of narcotic coming from the vehicle[,] there's been several occasions where I've found that folks that use narcotics[,] that's where they place it is in this watch pocket. I had reasonable suspicion to believe that this was marijuana that he had in this watch pocket. . . . As I reached in the pocket to pull it out[,] it was a clear baggy containing marijuana. At [this] time[,] the passenger was placed under arrest.

Smith testified that the back seat passenger was also arrested because "[h]e was unfamiliar whether he was a convicted felon or not. The driver had stated to me during my interview with him that there was a handgun locked up in the glove box."

On cross-examination, Smith testified that he never located any drug paraphernalia or marijuana cigarettes, and he could not say where the odor of burning marijuana had been emanating from other than "inside of the car." Smith also testified that he had placed the driver in handcuffs prior to learning that there was a handgun in the vehicle. Smith explained that placing an individual in handcuffs is "something . . . I've always done. My sergeant has always done it. I've always done it. Any time there's an odor of a narcotic in the vehicle[,] I immediately take them out of the car and place them in handcuffs and call for backup." Smith testified that he did not read the driver his *Miranda*[2] rights prior to placing him in handcuffs or questioning him.

---

[2] *Miranda v. Arizona*, 384 U. S. 436 (86 SC 1602, 16 LE2d 694) (1966).

Smith continued that the search of Ramsey was "based on the odor of [burning] marijuana coming from the vehicle," but later explained that "[i]t was a pat down for weapons until [he] found the bulge in [Ramsey's] pocket." Smith recognized that the bulge "didn't feel like a weapon . . . it felt like a narcotic" and, in his experience, Smith was reasonably certain he would find narcotics in the pocket. Smith clarified that initially he was only patting Ramsey down for weapons, but then he felt the bulge in his pocket; Smith articulated that the risk Ramsey posed to him was based on the fact that there were three occupants in the vehicle at the beginning of the stop, and he smelled the odor of narcotics. Smith testified that at the time he removed Ramsey from the vehicle (after the other officer had arrived), Smith did not "do anything that caused [Smith] to fear for [his] safety." Smith never discovered any burnt marijuana or smoking implements from the vehicle or the persons of the three men.

Ramsey moved to suppress the marijuana discovered in his watch pocket during the search, which motion was denied by the trial court after a hearing. On appeal, Ramsey's single enumeration of error is that the trial court erred by denying his motion to suppress the evidence of marijuana discovered during the pat-down search. We disagree.

A *Terry*[3] pat-down, unlike a full search, is conducted for the purpose of ensuring the safety of the officer and of others nearby, not to obtain evidence for use at trial. It is a minimal intrusion reasonably designed to discover guns, knives, clubs, or other weapons that could prove dangerous to a police officer. Under *Terry*, an officer is authorized to pat down a suspect's outer clothing. He may intrude beneath the surface in only two instances: (1) if he comes upon something that feels like a weapon, or (2) if he feels an object whose contour or mass makes its identity as contraband immediately apparent, i.e., the "plain feel" doctrine.[4]

Moreover, "[a]n officer who has lawfully detained a citizen is authorized to conduct a *Terry* pat-down for weapons *only* if the officer has a reasonable belief preparatory to an intended pat-down that the suspect is armed and presents a danger to the officer or others."[5] With regard to *Terry* pat-downs of automobile passengers, this Court has recently reiterated that to search the passenger, the

---

[3] *Terry v. Ohio*, 392 U. S. 1 (88 SC 1868, 20 LE2d 889) (1968).

[4] (Punctuation omitted.) *Johnson v. State*, 297 Ga. App. 847, 848 (678 SE2d 539) (2009).

[5] (Punctuation omitted; emphasis supplied.) *Perez v. State*, 284 Ga. App. 212, 216 (3) (a) (643 SE2d 792) (2007).

officer must have a reasonable suspicion that the individual himself poses a threat to the officer, and it is insufficient to justify a pat-down of each occupant on the situation itself.[6] It is inappropriate that a pat-down be conducted as a matter of routine or policy.[7]

Ramsey first argues that the trial court erred by denying the motion to suppress because Smith did not have a reasonable articulable suspicion to pat down Ramsey's person. In this instance, despite the fact that Smith testified at the time he asked Ramsey to step from the car to be searched, Ramsey did nothing to make Smith fear for his safety, and despite Smith's lengthy testimony regarding his habitual use of handcuffing individuals and employing pat-down searches in certain instances, the trial court's denial of the motion was supported with regard to this issue. Ramsey was the front seat passenger in a vehicle in which the driver admitted a weapon was contained in the glovebox. Moreover, Smith had detected the scent of burning marijuana upon approaching the vehicle.[8] Smith's credibility was for the trial court to determine, and taken together, those facts support the trial court's denial of the motion to suppress with regard to the issue of whether Smith was authorized to conduct the pat-down search of Ramsey.

Ramsey also contends that Smith exceeded the permissible scope of the pat-down when the officer intruded into his pocket. We disagree.

---

[6] See *Molina v. State*, 304 Ga. App. 93, 97-98 (695 SE2d 656) (2010).

[7] See id. at 98; see also, e.g., *Edgell v. State*, 253 Ga. App. 775, 777-778 (560 SE2d 532) (2002) (reversing denial of a motion to suppress because the pat-down was not supported with reasonable suspicion that defendant was armed or dangerous and was instead performed as an automatic and habitual practice by the officer); *State v. Banks*, 223 Ga. App. 838, 840 (479 SE2d 168) (1996) (physical precedent only) (reversing denial of motion to suppress evidence gathered during a pat-down search of individuals loitering outside an apartment building on the basis that nothing in the record showed that they were armed and dangerous). Compare with *State v. Cannon*, 253 Ga. App. 445, 447-448 (559 SE2d 76) (2002) (reversing grant of motion to suppress on the basis that probable cause to search the defendant's person existed at the time of the traffic stop based on a number of factors including, but not limited to, the smell of and admission of use of marijuana, the defendant's uncooperative behavior during the pat-down, and the defendant's known previous involvement in the drug trade).

[8] See, e.g., *Brown v. State*, 283 Ga. App. 250, 253-254 (641 SE2d 551) (2006) (officer authorized to conduct pat-down when confronting "a group of individuals [after] undisputably detect[ing] the odor of burning marijuana"); *Bailey v. State*, 283 Ga. App. 365, 368-369 (2) (641 SE2d 548) (2006) (credibility of officer's testimony that he was capable of smelling marijuana smoke emanating from a vehicle was a matter for the trial court); *Cannon*, 253 Ga. App. at 447-448 (admitted drug use and occupant known to be involved in the drug trade warrants pat-down search for safety). Although Ramsey maintains that Smith failed to support his ability to identify the smell of marijuana with testimony of his training and experience with the smell, Smith testified that he had worked at the sheriff's department for over four years and had previously encountered individuals in possession of narcotics. Thus, the trial court was authorized to believe Smith's testimony that he smelled burning marijuana. See *Bailey*, 283 Ga. App. at 368-369 (2).

Under the plain feel doctrine, if, during a lawful pat-down search, an officer feels an object whose contours or mass makes it immediately identifiable as contraband, that officer can seize the item. Thus, for evidence to be admissible under the plain feel doctrine, the searching officer must express a degree of certainty in identifying the item. This is so because a pat-down search is conducted solely for the purpose of [e]nsuring the safety of the officer and of others nearby, not to procure evidence for use at a subsequent trial.[9]

Here, Smith testified that the bulge in Ramsey's watch pocket "felt like a narcotic," and in his experience, contraband sometimes was hidden in the watch pocket by other individuals. Although Smith did not testify concerning the specifics of this particular bulge's "contour or mass [that] ma[de] its identity as contraband immediately apparent," we find no abuse of discretion in the trial court's denial of the motion to dismiss based on Smith's testimony on cross-examination that the item felt like contraband.[10] Accordingly, we affirm the trial court's denial of Ramsey's motion to suppress.

*Judgment affirmed. Andrews, P. J., and Ellington, J., concur.*

DECIDED NOVEMBER 5, 2010.

*Catherine S. Bernard, Wendell R. Adams*, for appellant.
*Louie C. Fraser, District Attorney, LaShonda C. Harris, Assistant District Attorney*, for appellee.

---

[9] (Punctuation omitted.) *Mason v. State*, 285 Ga. App. 596, 597 (647 SE2d 308) (2007).

[10] *State v. Henderson*, 263 Ga. App. 880, 883-885 (589 SE2d 647) (2003) (collecting cases concerning plain feel doctrine).