A08A1674. EATON v. THE STATE.
(668 SE2d 770)

ANDREWS, Judge.

Kirsten Marie Eaton was found guilty by a jury of trafficking in methamphetamine and possession of methamphetamine with intent to distribute. We find no merit to Eaton's claims that the trial court should have suppressed evidence of the methamphetamine because the State obtained it in violation of her Fourth Amendment rights, or that the trial court should have excluded evidence of the methamphetamine from the trial because the State failed to establish the chain of custody. For the following reasons, we affirm.

1. The State produced testimony from a police officer that, when he placed Eaton under arrest after a traffic stop, he found suspected methamphetamine in her possession. A forensic chemist testified that the suspected methamphetamine was weighed and tested at the State Crime Lab and proved to be a substance which weighed in excess of 28 grams and tested positive for methamphetamine. A police officer experienced in narcotics investigations testified that the amount of methamphetamine found in Eaton's possession, along

with a weight scale and plastic bags also found in her possession, was evidence that she possessed the methamphetamine with the intent to sell and distribute it to others. The evidence was sufficient for the jury to find beyond a reasonable doubt that Eaton was guilty of the charged offenses. OCGA §§ 16-13-31 (e); 16-13-30 (b); *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. The trial court correctly denied Eaton's motion to suppress the methamphetamine made on the basis that the arresting officer violated her right under the Fourth Amendment not to be subjected to unreasonable search and seizure.

The evidence showed that the officer stopped the car Eaton was driving after a computer check showed that the registration on the car was suspended. The officer ordered Eaton out of the car and immediately discovered that she was also driving without a license. While questioning Eaton about the registration and license, the officer became concerned for his safety when he observed Eaton's extremely nervous manner and he saw an object partially sticking out of the fanny pack she was wearing which looked like it could have been the handle of a gun or knife. When the officer pointed at the fanny pack and asked Eaton if she had any weapons in the pack, Eaton immediately grabbed the fanny pack with her hands. The officer immediately grabbed Eaton's hands to pull them away from the pack, and as he did so he saw a small bag of suspected methamphetamine in one of her hands. At that point the officer attempted to place Eaton under arrest for possession of methamphetamine. Eaton resisted arrest by trying to run away and then by fighting with the officer. During the officer's struggle to subdue and handcuff Eaton, a large bag of suspected methamphetamine fell out of the fanny pack.

Having conducted a computer check which showed that the car was being driven with a suspended registration, the officer properly stopped the car to question the driver and was entitled to order the driver, Eaton, to get out of the car. *State v. Swift*, 232 Ga. 535, 536 (207 SE2d 459) (1974); *Brendlin v. California*, 551 U. S. 249 (127 SC 2400, 2405-2406, 168 LE2d 132) (2007). Eaton could produce no vehicle registration or driver's license. With probable cause to believe that Eaton had committed registration and licensing offenses, the officer had the option at that point to either make a warrantless custodial arrest of Eaton for the offenses or to issue her citations for the offenses. *Baker v. State*, 202 Ga. App. 73 (413 SE2d 251) (1991). If the officer had opted to make a custodial arrest for those offenses, he would have been entitled for his own safety to search Eaton and her fanny pack incident to the arrest. Id.; *Atwater v. City of Lago Vista*, 532 U. S. 318, 344-347, 354 (121 SC 1536, 149 LE2d 549) (2001); *Virginia v. Moore*, ___ U. S. ___ (128 SC 1598,

1607-1608, 170 LE2d 559) (2008). If instead of making a custodial arrest the officer had opted to issue citations for those offenses, no search incident to arrest would have been authorized. *Knowles v. Iowa*, 525 U. S. 113, 116-119 (119 SC 484, 142 LE2d 492) (1998). In that case, "[t]he threat to officer safety from issuing a traffic citation . . . is a good deal less than in the case of a custodial arrest" which involves the additional exposure of taking physical custody of the suspect and transport to the police station. Id. at 117. Routine traffic stops involving issuance of citations rather than custodial arrests are more analogous to investigative detentions under *Terry v. Ohio*, 392 U. S. 1 (88 SC 1868, 20 LE2d 889) (1968). *Knowles*, 525 U. S. at 117. Nevertheless, because concern for officer safety is still present at routine traffic stops, officers involved in any traffic stop may order the driver and any passengers out of the vehicle. Id. at 118; *Brendlin*, 127 SC at 2407. For their own safety, officers at routine traffic stops may also perform a limited *Terry*-type search of the driver or any passenger to discover weapons if the officer has a reasonable basis to believe that the person is armed. *Terry*, 392 U. S. at 27-30; *Johnson v. State*, 289 Ga. App. 27, 29 (656 SE2d 161) (2007).

The record does not show that the officer had opted to make a custodial arrest for the vehicle registration or licensing offenses when he observed Eaton's extremely nervous behavior and saw what could have been the handle of a gun or knife sticking out of Eaton's fanny pack. Under these circumstances, we analyze the officer's actions under the principles set forth in *Terry*, supra, applicable during a routine traffic stop. Based on the object he saw sticking out of the fanny pack, the officer had a reasonable basis to believe that Eaton may be armed. The officer pointed at the fanny pack and asked Eaton if she had any weapons in the pack, and Eaton reacted by grabbing the pack with her hands. The officer did nothing which violated the limits of a *Terry*-type search by simply pointing at the pack and asking Eaton if she had any weapons in the pack. When Eaton reacted to the question by grabbing the pack with her hands, the officer acted within *Terry* limits to protect himself by pulling Eaton's hands away from the pack to prevent her from gaining access to the object inside that he reasonably suspected could have been a weapon. Pulling Eaton's hands away from the pack revealed in plain view to the officer that Eaton had a small bag of suspected methamphetamine in one of her hands. It follows that the officer lawfully discovered the small bag of suspected methamphetamine in plain view during actions that were within the parameters of a limited *Terry*-type protective search. *Minnesota v. Dickerson*, 508 U. S. 366, 374-375 (113 SC 2130, 124 LE2d 334) (1993). At that point, the officer acted on probable cause to arrest Eaton for possession of

methamphetamine. During the officer's subsequent struggle to arrest Eaton, the second larger bag of suspected methamphetamine fell out of the fanny pack in plain view of the officer. It follows that the officer lawfully discovered the second bag in plain view while engaged in a lawful arrest. *Washington v. Chrisman*, 455 U. S. 1, 5-7 (102 SC 812, 70 LE2d 778) (1982).

3. Eaton claims that the trial court erred when, over her chain of custody objection, the court admitted exhibits containing the actual suspected methamphetamine found by the officer. Eaton made no objection to the testimony from the Crime Lab forensic chemist that the suspected methamphetamine received from the officer weighed in excess of 28 grams and tested positive for methamphetamine, nor did she object to admission of the Crime Lab report setting forth these conclusions.

Eaton objected that the State did not produce testimony from all the State Crime Lab employees who had access to or handled the methamphetamine at the Lab. Instead, the Crime Lab forensic chemist who tested the methamphetamine testified that it was handled according to the routine procedures used by the Lab to ensure that there was no tampering with or substitution of the methamphetamine while it was at the Lab. Eaton produced no affirmative evidence of tampering, substitution, or mishandling of the methamphetamine. In the absence of this affirmative evidence, there is no error in treating the Crime Lab "as a single 'link' in the chain of custody for admissibility purposes." *Givens v. State*, 214 Ga. App. 774, 775 (449 SE2d 149) (1994). "[M]ere speculative doubt as to the handling of evidence while in the possession of the Georgia Crime Lab is a matter for consideration by the jury." (Citation and punctuation omitted.) *Johnson v. State*, 271 Ga. 375, 382 (519 SE2d 221) (1999). The State carried its burden to gain admission of the methamphetamine by showing with reasonable certainty that the methamphetamine was the same as that seized and that there had been no tampering or substitution. *Johnson v. State*, 143 Ga. App. 169-170 (237 SE2d 681) (1977).

Moreover, even if the State failed to prove the chain of custody as to the methamphetamine and it was erroneously admitted, we would find no harm in this case. Because the testimony of the forensic chemist and the Crime Lab report about the methamphetamine were admitted without objection, we find it highly probable that any such error would not have contributed to the guilty verdict. *Johnson v. State*, 238 Ga. 59, 61 (230 SE2d 869) (1976); *Schauver v. State*, 146 Ga. App. 701 (247 SE2d 228) (1978).

By failing to raise the issue at trial, Eaton waived her claim that the absence of the other Crime lab employees violated her Sixth

Amendment right to confront the witnesses against her. *Cottrell v. State*, 287 Ga. App. 89, 92 (651 SE2d 444) (2007).
    *Judgment affirmed. Ruffin, P. J., and Bernes, J., concur.*

DECIDED OCTOBER 20, 2008.

*Donna A. Seagraves, Amanda E. Meloun*, for appellant.
*Richard K. Bridgeman, District Attorney, Robin R. Riggs, Assistant District Attorney*, for appellee.