A10A1499. GROVES et al. v. THE STATE.

(703 SE2d 371)

DOYLE, Judge.

In this interlocutory appeal, Curtis Groves and David Smith challenge the denial of their motions to suppress evidence obtained by an officer during a traffic stop. Because the officer executed the traffic stop without the suspicion required to justify such a stop under the Fourth Amendment of the United States Constitution, we reverse.

> On appeal from a motion to suppress, the evidence is viewed in a light most favorable to upholding the trial court's judgment. The credibility of witnesses and the weight accorded their testimony rest with the trier of fact. Thus, the trial court's findings on disputed facts and credibility must be accepted unless clearly erroneous. Where the evidence is uncontroverted and there is no issue as to witness credibility, however, we review de novo the trial court's application of the law to the undisputed facts.[1]

In this case, the relevant facts are not in dispute. The record shows that an officer on patrol spotted a lone sedan parked at the edge of an otherwise empty parking lot at a truck plaza. The officer pulled his marked patrol car behind the car and noticed that it was occupied by a passenger, Smith, and a driver, Groves, who was leaning briefly into the passenger side. Neither occupant noticed the officer, and approximately one and a half minutes elapsed as the officer called in the tag number. Groves then looked up, noticed the

---

[9] See id.

[1] (Punctuation and footnotes omitted.) *Sanders v. State*, 247 Ga. App. 170-171 (543 SE2d 452) (2000).

patrol car in his rear view mirror, put his car into gear, and "continued to drive on." The officer immediately activated his emergency lights and executed a traffic stop of the vehicle.

After the car stopped, the officer spoke to the occupants, noticed the smell of alcohol coming from Groves, obtained consent to search the car, and discovered what turned out to be crushed oxycodone packaged in cellophane in the car's glove box. Based on the contraband, Groves and Smith were arrested and charged with one count of possession of oxycodone in violation of the Georgia Controlled Substances Act.[2] The two defendants unsuccessfully moved to suppress the evidence from the stop, and this Court granted their application for interlocutory appeal.

Groves and Smith argue that the trial court erred by concluding that the officer's initial traffic stop was justified and by ruling that the evidence obtained during the stop was therefore admissible. We agree.

> According to *Terry v. Ohio*,[3] police-citizen encounters are generally categorized into three tiers: consensual encounters; brief investigatory stops, which require reasonable suspicion; and arrests that must be supported by probable cause. In a first-tier encounter, police officers may approach citizens, ask for identification, and freely question the citizen without any basis or belief that the citizen is involved in criminal activity, as long as the officers do not detain the citizen or create the impression that the citizen may not leave. . . . So long as a reasonable person would feel free to disregard the police and go about his business, the encounter is consensual and no reasonable suspicion is required.[4]

As an initial matter, we note that "[t]he actions of an officer approaching a stopped vehicle, requesting to see a driver's license, and inquiring about possible criminal or suspicious activity clearly fall within the realm of the first type of police-citizen encounter and do not amount to a stop" implicating Fourth Amendment concerns.[5] Thus, before Groves pulled away, while the officer merely sat in his patrol car behind Groves's stopped vehicle, the encounter had not yet risen beyond a consensual, first-tier encounter requiring no suspi-

---

[2] OCGA § 16-13-30 (a).

[3] 392 U. S. 1 (88 SC 1868, 20 LE2d 889) (1968).

[4] (Citation and punctuation omitted.) *Black v. State*, 281 Ga. App. 40, 43 (1) (635 SE2d 568) (2006).

[5] (Punctuation omitted.) *Brittian v. State*, 257 Ga. App. 729, 731 (572 SE2d 76) (2002).

cion. Therefore, Groves was free to ignore the officer and leave if he chose.[6]

However, after Groves began to pull away, the officer activated his emergency lights, executed a traffic stop, and asked Groves for his identification. This escalated the encounter to a second-tier *Terry* stop,[7] because the officer's intention was undisputably to stop Groves from driving away.[8]

> During a second-tier encounter, . . . a police officer, even in the absence of probable cause, may stop persons and detain them briefly, when the officer has a particularized and objective basis for suspecting the persons are involved in criminal activity. *To stop a citizen, the officer must possess more than a subjective, unparticularized suspicion or hunch. The officer's action must be justified by specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion, and the officer must have some basis from which the court can determine that the detention was neither arbitrary nor harassing.*[9]

Here, the officer testified at the suppression hearing that the car seemed "extremely out of place" in the empty truck plaza parking lot, but he had no other reason to suspect any criminal activity. Nevertheless, despite having no "specific and articulable facts" supporting a suspicion of criminal activity, the officer conducted "a traffic stop as soon as the driver put the vehicle into gear and went to leave the scene." Such stops are unauthorized.[10] That the car was "out of place" perhaps gave rise to a generalized suspicion or hunch, but in the absence of other circumstances, Groves's mere presence in

---

[6] See *Black*, 281 Ga. App. at 43 (1).

[7] See *O'Neal v. State*, 273 Ga. App. 688, 690 (616 SE2d 479) (2005) (second tier because an officer pulled next to a parked car and activated blue lights); *Peters v. State*, 242 Ga. App. 816, 817 (1) (531 SE2d 386) (2000) (officer's command to stop created a second-tier encounter); *McKinley v. State*, 213 Ga. App. 738, 739 (445 SE2d 828) (1994) (second tier because an officer pulled behind a parked van, activated blue lights, and told the driver to step back in his car). Compare *Darwicki v. State*, 291 Ga. App. 239, 240 (1) (661 SE2d 859) (2008) (pulling behind stopped vehicle in its lane of travel with blue lights activated was not a traffic stop because given the late hour and the hazard created by vehicles on a dark roadway, the blue lights would not create the impression that driver could not leave the scene) (physical precedent only).

[8] There is no evidence that Groves's manner of driving was overly abrupt or amounted to flight from the officer. Compare *Sharp v. State*, 275 Ga. App. 487, 488 (1) (621 SE2d 508) (2005) (running from scene of gunfire at sight of officers – across a fence and into nearby woods – was sufficient to give an articulable suspicion of illegal activity).

[9] (Citations and punctuation omitted; emphasis supplied.) *Black*, 281 Ga. App. at 43 (1).

[10] See id.

an empty truck plaza parking lot was not sufficient to warrant a traffic stop.[11]

> This evidence simply did not constitute an objective mani-
> festation that [Groves and Smith were], or [were] about to
> be, engaged in criminal activity sufficient to warrant the
> intrusion of a traffic stop. While such behavior might justify
> an officer in closely observing the individual[s] engaged in
> that behavior, it is not alone sufficient to indicate that the
> individual[s] [are] or might be engaged in illegal activity so
> as to provide a reasonable, articulable suspicion to stop
> [those] individual[s].[12]

Moreover, Groves's actions prior to the stop — putting the car into gear and proceeding on his way — were not sufficient to justify the stop, because at that point the encounter was a consensual, first-tier encounter, and Groves was entitled "to exercise his right to ignore the police and to leave. Indeed, a citizen's ability to walk away from or otherwise avoid a police officer is the touchstone of a first-tier encounter."[13] "Such conduct may not provide the basis for elevating the encounter to a second-tier *Terry* stop."[14]

In light of our conclusion, the oxycodone at issue in this case was inadmissible because it was discovered pursuant to consent that was the product of an unauthorized traffic stop.[15] Likewise, the smell of alcohol about Groves's person did not authorize further investiga-tion or detention because it was observed during the unauthorized traffic stop.[16] Accordingly, we reverse the trial court's denial of the defendants' motions to suppress.

*Judgment reversed. Andrews, P. J., and Ellington, J., concur.*

### DECIDED NOVEMBER 15, 2010.

*Catherine S. Bernard*, for appellants.

---

[11] See *Pritchard v. State*, 300 Ga. App. 14, 16 (684 SE2d 88) (2009) (parking in front of a house previously raided by police did not justify second-tier stop); *Black*, 281 Ga. App. at 46 (1) (mere presence at a house under surveillance for drug activity did not give rise to reasonable articulable suspicion). See also *Peters*, 242 Ga. App. at 817 (1) (hurrying to car from known drug location did not justify second-tier stop).

[12] *Pritchard*, 300 Ga. App. at 16.

[13] (Citation and punctuation omitted.) *Black*, 281 Ga. App. at 44 (1). See also *In re J. M.*, 276 Ga. 88-89 (1) (575 SE2d 441) (2003) (Georgia's constitution provides citizens a "funda-mental constitutional right to 'be let alone,' provided they are not interfering with the rights of other individuals or of the public.").

[14] *Black*, 281 Ga. App. at 46 (1).

[15] See id. at 48 (1); *Pledger v. State*, 257 Ga. App. 794, 797 (572 SE2d 348) (2002).

[16] See id.

*L. Craig Fraser, District Attorney, LaShonda C. Harris, Assistant District Attorney*, for appellee.