**SECOND DIVISION**
**BARNES, P. J.,**
**ADAMS and MCFADDEN, JJ.**

NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)
http://www.gaappeals.us/rules/

**October 5, 2012**

# In the Court of Appeals of Georgia

A12A1148. THE STATE v. CLEVELAND.                    AD-044C

ADAMS, Judge.

The State appeals the trial court's order granting Antonio Bernard Cleveland's motion to suppress evidence seized in connection with his arrest for one count of possession of cocaine. We affirm for the reasons set forth below.

In considering a trial court's grant of a motion to suppress,

the evidence is viewed in a light most favorable to upholding the trial court's judgment. The credibility of witnesses and the weight accorded their testimony rest with the trier of fact. Thus, the trial court's findings on disputed facts and credibility must be accepted unless clearly erroneous. Where the evidence is uncontroverted and there is no issue as to witness credibility, however, we review de novo the trial court's application of the law to the undisputed facts.

(Punctuation omitted.) *Groves v. State,* 306 Ga. App. 779 (703 SE2d 371) (2010).

Deputy Casey Clark of the Upson County Sheriff's Department was the only witness at the hearing on the motion to suppress. He testified that on October 22, 2009, he stopped a vehicle after observing that the front seat passenger was not wearing a seat belt. As he approached the car, Clark noticed that Cleveland was a passenger in the back seat of the car and that he appeared to be "unusually nervous." Clark was aware that Cleveland had previously been arrested for possession of cocaine. Although Clark warned Cleveland not to move around or reach toward the floorboard, Cleveland kept moving his hands, reaching toward the floorboard and moving clothing around in the back seat, prompting Clark to call for backup. After Upson County Sheriff's Deputy Hollis arrived, Clark gave the driver a warning about the seat belt violation and told her that she was free to leave. The driver then volunteered that there was nothing illegal in the car. At that point, Clark requested and received consent from the driver to search the vehicle.[1]

While Clark and Hollis were talking to the driver, Clark observed Cleveland watching them through the car's rear window and noticed him reach through to the front of the car. At that point, Clark asked Cleveland to exit the vehicle. Clark

---

[1] The trial court found that Cleveland did not contest the constitutionality of Clark's asking the driver's consent to search and thus the court did not reach that issue below. Accordingly, we do not address the issue on appeal.

conducted a pat-down search of Cleveland, told him to sit down and asked him to remove his shoes. The officer said that it was his practice to ask a suspect to remove his shoes if the suspect had been observed reaching toward his feet. In this instance, his concern was that Cleveland might have a weapon in his shoe, a razor blade or a pocket knife, or might have illegal drugs that he would attempt to hide or destroy. At some point, Deputy Hollis told Clark that Cleveland had thrown a bag of something that appeared to be crack cocaine from his right hand and then stepped on it. The officers subsequently recovered the bag, resulting in the charge in this case.

The trial court granted Cleveland's motion to suppress on the ground that Clark's pat-down search of Cleveland exceeded the lawful purpose of officer safety because Clark testified that the search was both to look for weapons and to look for drugs. The trial court also found that the officer exceeded the scope of a lawful search by requiring that Cleveland remove his shoes without "first discovering an object that he reasonably believe[d] to feel like a weapon."

The State argues that the trial court erred in suppressing the evidence recovered during the search of Cleveland because: 1) the pat-down was an objectively reasonable search for weapons even if Clark also subjectively believed that Cleveland might be attempting to conceal drugs; 2) Clark's request that Cleveland remove his

3

shoes was reasonable based upon his observation that Cleveland had the opportunity to hide a weapon in his shoe; and 3) no evidence existed that the drugs were ever concealed in Cleveland's shoe as Deputy Hollis observed Cleveland dropping the bag from his hand.

Under *Terry v. Ohio,* 392 U.S. 1 (88 SC 1868, 20 LE2d 889) (1968), a pat-down search for weapons is authorized *"only* if the officer has a reasonable belief preparatory to an intended pat-down that the suspect is armed and presents a danger to the officer or others." (Punctuation and footnote omitted; emphasis in original.) *Ramsey v. State*, 306 Ga. App. 726, 728 (703 SE2d 339) (2010).

> Nevertheless, because concern for officer safety is still present at routine traffic stops, officers involved in any traffic stop may order the driver and any passengers out of the vehicle. For their own safety, officers at routine traffic stops may also perform a limited *Terry*-type search of the driver or any passenger to discover weapons if the officer has a reasonable basis to believe that the person is armed.

(Citations omitted.) *Eaton v. State,* 294 Ga. App. 124, 126 (2) (668 SE2d 770) (2008). Here, even construing the evidence most favorably to support the trial court's order, we conclude that Cleveland's nervous behavior, which involved ignoring Clark's directions not to move his hands or reach toward his feet and moving clothing around

4

in the back seat; his actions in reaching toward the front of the car while observing the officers through the rear window; and Clark's knowledge of Cleveland's prior drug history, provided a reasonable basis to support a pat-down search for weapons under the *Terry* standard. See *O'Quinn v. State*, 303 Ga. App. 657, 659 (695 SE2d 60) (2010) (passenger's nervous behavior and reaching movements inside the vehicle provided basis for *Terry* search for weapons); *Boyd v. State*, 300 Ga. App. 455, 457 (1) (685 SE2d 319) (2009) (officer's knowledge of defendant's prior involvement with drugs justified officer's pat-down in light of "the well-known association of weapons and drugs").

The fact that Clark also suspected that Cleveland might have contraband on his person does not undercut the objective facts supporting a pat-down to secure officer safety. "The issue [of whether a *Terry* pat-down search was reasonable] does not turn on the officer's subjective belief; rather the issue is whether the officer has objectively reasonable grounds to believe or suspect that the person may be armed." (Citations omitted.) *State v. Kipple*, 294 Ga. App. 420, 421 (1) (669 SE2d 185) (2008). In this case, Clark had objectively reasonable grounds to conduct a pat-down search of Cleveland, and Clark's subjective suspicions that Cleveland might also have had drugs do not factor into our analysis. Compare *State v. Stephens*, 167 Ga. App.

5

707, 708 (307 SE2d 518) (1983) (affirming suppression of evidence obtained during a pat-down search of car passenger for the stated purpose of searching for weapons and to prevent the destruction of evidence, where the evidence showed "*no* adequate grounds . . . to search appellee for weapons, since [the officer] had no reason to believe that appellee was armed and dangerous") (emphasis supplied).

Nevertheless, Clark's search went beyond a mere *Terry*-authorized pat-down when he directed Cleveland to remove his shoes. Such an intrusion beneath the surface of a suspect's clothing requires further justification:

> A *Terry* pat-down, unlike a full search, is conducted for the purpose of ensuring the safety of the officer and of others nearby, not to obtain evidence for use at trial. It is a minimal intrusion reasonably designed to discover guns, knives, clubs, or other weapons that could prove dangerous to a police officer. Under *Terry*, an officer is authorized to pat down a suspect's outer clothing. He may intrude beneath the surface in only two instances: (1) if he comes upon something that feels like a weapon, or (2) if he feels an object whose contour or mass makes its identity as contraband immediately apparent, i.e., the "plain feel" doctrine.

(Citation omitted.) *Johnson v. State,* 297 Ga. App. 847, 848 (678 SE2d 539) (2009). Clark never testified that he felt any object in or around Cleveland's shoes or that the shoes were of a material or thickness that would have prevented him from detecting

6

a weapon during a pat-down search; thus, the State provided no evidence to justify requiring Cleveland to remove his shoes. Compare *Boyd v. State*, 300 Ga. App. at 458 (1) (detaining defendant while waiting for a drug dog to perform a sniff test on his shoes supported by reasonable suspicion of further criminal activity where officers were aware defendant was on probation for drug offense; defendant resisted efforts to search below his knees or to look in his shoes; officer testified that he could not feel through the shoe material to determine if anything was inside; and earlier search located a weapon on defendant's person); *Collins v. State*, 281 Ga. App. 240, 241 (1) (636 SE2d 32) (2006) (officer's request that defendant remove shoes following pat-down justified by fact that defendant was in violation of bond, giving officers probable cause to arrest him and search him incident to arrest). Accordingly, we conclude that the trial court correctly found that the search of Cleveland's shoes was not justified under the facts as presented by the State.

Although in certain instances, when faced with threatening conduct an officer may make an immediate intrusive search to investigate or eliminate a threat to his safety, this was not such a case. The State presented no evidence indicating that Cleveland's actions amounted to threatening or obstructive conduct. Compare, e. g., *Thomas v. State*, 231 Ga. App. 173, 174 (498 SE2d 760) (1998) (where as defendant

7

stepped out of car, he kept placing his hand in his pocket and refused to move it, officer justified in forcibly removing defendant's hand and reaching into pocket to search for a weapon); *Hayes v. State*, 202 Ga. App. 204 (414 SE2d 321) (1991) (more intrusive search justified where defendant frustrated officer's attempts at pat-down by turning his body away to prevent officer from touching the outside of his pocket).

Although the State also argues that the cocaine was not discovered as a result of asking Cleveland to remove his shoes, but rather it dropped from his hand, the prosecution failed to raise this argument below, and, in fact, conceded in its briefing to the trial court that the pat-down search and asking Cleveland to remove his shoes ". . . led to [Cleveland] voluntarily throwing [the] drugs." An argument raised for the first time on appeal in connection with a motion to suppress is not reviewable. (Footnote omitted.) *Harper v. State*, 285 Ga. App. 261, 266 (2) (645 SE2d 741) (2007).

*Judgment affirmed. Barnes, P. J., and McFadden, J., concur.*

December 11, 2012

ON MOTION FOR RECONSIDERATION

In its motion for reconsideration, the State contests our conclusion that it failed to argue below that the drug evidence was admissible because Cleveland dropped them from his hand following the illegal search of his shoes. In support of its motion, the State points to portions of *defense* briefs and argument anticipating that the State might raise such an issue. Although the State urges us to conclude from the context of these arguments, that "it is clear that the State's representative was offering to respond to the abandonment issue," it is equally clear that the State never argued the issue. In fact, the State does not point to any affirmative action by the prosecution presenting this issue to the trial court other than an offhand comment in the State's brief in connection with its argument that the patdown search of Cleveland was legal. Without argument or citation on the issue of abandonment, the State merely asserts that "[i]t should be noted, however, that the Defendant did throw the drugs at a point where he was not being touched."

Thus, we reiterate our conclusion that the State failed to frame the issue for the trial court, and the State certainly failed to obtain a ruling on it. But even if the defense arguments and the state's isolated comment in a brief could be considered sufficient to have presented the issue for the trial court's consideration, the record

evidence is insufficient to support the State's position. The State has the burden on a motion to suppress to prove that the search was lawful and the evidence legally obtained. See OCGA § 17-5-30 (b); *In the Interest of J. B.*, 314 Ga. App. 678, 680 (1) (725 SE2d 810) (2012); *Walker v. State*, 299 Ga. App. 788 (683 SE2d 867) (2009). Here, it cannot be determined whether or not Cleveland's action in dropping the drugs was sufficiently connected to the illegal search of his shoes to render the drugs "fruit of the poisonous tree." See *Baker v. State,* 277 Ga. App. 520, 523 (2) (627 SE2d 145) (2006). The only evidence offered by the State on this point was hearsay testimony from Deputy Clark that Deputy Hollis told him Cleveland had dropped something and stepped on it while he was replacing his right shoe following the illegal search. The State concedes that the drugs were dropped after Cleveland was forced to remove his shoes, although it argues, without further factual support, that the abandonment of the drugs was not caused by the shoe search. Accordingly, the State failed to carry its burden to establish that the seizure of the drugs was lawful, and the trial court's ruling must be affirmed.