**FIFTH DIVISION**
**MCFADDEN, P. J.,**
**RICKMAN and MARKLE, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**February 15, 2019**

# In the Court of Appeals of Georgia

A18A1682. IN THE INTEREST OF A. P., a child.

MCFADDEN, Presiding Judge.

A. P. was adjudicated delinquent for violating OCGA § 16-11-132, which prohibits any person under the age of 18 from possessing or having under his control a handgun. A. P. appeals the adjudication of delinquency. A. P. argues that the juvenile court erred by denying his motion to suppress, but we find that the arresting officer had reasonable suspicion to detain him and probable cause to arrest him. He argues that the state failed to prove that he possessed a "handgun" as that term is defined in the Georgia Code, but we find that the evidence was sufficient to permit the juvenile court to find that A. P. possessed a handgun in DeKalb County. So we affirm.

1. *Motion to suppress*.

"On appeal from a motion to suppress, the evidence is viewed in a light most favorable to upholding the trial court's judgment. The credibility of witnesses and the

weight accorded their testimony rest with the trier of fact. Thus, the trial court's findings on disputed facts and credibility must be accepted unless clearly erroneous." *Groves v. State,* 306 Ga. App. 779, 779 (703 SE2d 371) (2010) (citation omitted). "[T]he reviewing court may also consider facts that definitively can be ascertained exclusively by reference to evidence that is uncontradicted and presents no questions of credibility, such as facts indisputably discernible from a videotape." *State v. Allen,* 298 Ga. 1, 2 (1) (a) (779 SE2d 248) (2015) (citation omitted). "Where the evidence is uncontroverted and there is no issue as to witness credibility, however, we review de novo the trial court's application of the law to the undisputed facts." *Groves v. State,* 306 Ga. App. at 779 (citation and punctuation omitted).

Viewed in this way, the evidence at the suppression hearing, which consisted of the testimony of the arresting officer, footage from body cameras, and an audio recording of a dispatch to police, shows the following. Officer T. G. Jones with the DeKalb County Police Department was one of several police officers who responded to a dispatch about a crime in progress at an apartment complex. The dispatcher, who was communicating with the complainant all the while, informed the officers that the complainant was reporting that a group of 14- to 15-year-old juveniles were in the process of stealing a vehicle outside of Building 13 of the Arbor Crossing Apartments

2

at 10 Arbor Crossing Drive. The dispatcher stated that she had been advised by the complainant that the juveniles had stolen a blue Dodge Journey; that they then were stealing a black Ford sedan with license plate "Delta Zulu Uniform 5301" and a silver Taurus; and that they were getting into the silver Taurus.

The dispatcher stated that there were five males and one female. The dispatcher continued to update the officers and stated that the complainant was now advising her that the group consisted of about 10 juveniles; that police had arrived at the scene; and that the juveniles had run off, although in what direction was not clear.

Officer Jones was the first officer at the scene. He was familiar with the apartment complex and immediately went to building 13. Officer Jones stopped A. P., who he believed to be 15 or 16 years old, and another male because they were walking away from the area where the complainant said the cars were being stolen. Officer Jones had another officer stand with the two boys while he walked around the building looking for more juveniles and the cars. He returned, then walked A. P. and the other boy to building 9, where officers were standing with other juveniles. Officer Jones had A. P. put his hands on his head as they walked.

As they were walking toward building 9, Officer Jones saw a "hard, heavy" object in A. P.'s front, right pocket. He asked A. P. to identify the object, and A. P.

3

said it was a cell phone. Once they reached the other officers, Officer Jones patted down A. P. for officer safety and felt the chamber of a revolver. Officer Jones arrested A. P. and confiscated a small-caliber revolver.

The juvenile court orally denied A. P.'s motion to suppress, ruling that "because of the reasonable suspicion [the officer] had the right to at that time stop the child."

A. P. argues that the juvenile court erred by denying his motion to suppress because Officer Jones lacked reasonable suspicion to briefly seize him and lacked probable cause to arrest him. We disagree.

The United States Supreme Court has established "three tiers of police-citizen encounters: (1) communication between police and citizens involving no coercion or detention and therefore without the compass of the Fourth Amendment, (2) brief seizures that must be supported by reasonable suspicion, and (3) full-scale arrests that must be supported by probable cause." *State v. Allen,* 330 Ga. App. 752, 755 (769 SE2d 165) (2015) (citations and punctuation omitted). A. P. and the state agree that Officer Jones' encounter with A. P. was initially a second-tier encounter that required reasonable suspicion.

To establish the required reasonable suspicion,

the totality of the circumstances must show that the officer had specific and articulable facts which, taken together with rational inferences from those facts, provided a particularized and objective basis for suspecting the particular person stopped of criminal activity. Although an investigative stop cannot be based on an officer's mere hunch that criminal activity is afoot, this process allows officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that might well elude an untrained person.

*Sims v. State*, 335 Ga. App. 625, 628 (782 SE2d 687) (2016) (citations and punctuation omitted). Moreover,

[a] dispatcher who reports a crime at a specified location gives police an articulable suspicion to investigate and detain individuals at the scene, particularly where police observations on arriving at the scene corroborate the dispatcher's report. Even if the dispatcher's information comes from a citizen or an unidentified informant, the investigatory detention is valid, for patrolling officers are not required to question dispatchers about the source of the information. . . . Corroboration only solidifies the existence of an articulable suspicion.

*Overand v. State*, 240 Ga. App. 682, 683 (1) (523 SE2d 610) (1999) (citations omitted).

Applying these standards, we find that under the totality of the circumstances Officer Jones had a reasonable suspicion that A. P. was engaged in or had been engaged in criminal activity so as to support the brief seizure of him. Officer Jones was dispatched to a crime in progress, arrived at the apartment complex where the crime was occurring while still speaking with the dispatcher, immediately went to the particular location where the complainant was reporting the crime to be occurring, and there spotted A. P. and the other boy, whose ages matched the ages of the juveniles described in the dispatch. The juveniles were in the precise location where, according to the dispatch, the crimes were being or had just been committed. This corroboration "solidified the existence of an articulable suspicion, and [Officer Jones] was not required to wait until he actually observed (A. P.) committing a crime." *State v. Harden,* 267 Ga. App. 381, 383 (599 SE2d 329) (2004) (citation and punctuation omitted).

Contrary to A. P.'s argument, Officer Jones did not elevate the second-tier encounter to a third-tier encounter simply because he had the juveniles stand with another officer while Officer Jones circled the building. There was no testimony indicating that his doing so unreasonably extended the duration of the investigative detention. See generally *Rodriguez v. State,* 295 Ga. 362, 369-370 (2) (b) (761 SE2d

6

19) (2014). Nor did having A. P. put his hands on his head elevate the investigative detention into a third-tier arrest. See *Walker v. State,* 314 Ga. App. 67, 70 (1) (722 SE2d 887) (2012) (encounter in which deputy held onto defendant's arm in an attempt to prevent him from leaving an apartment before showing his identification was a second-tier detention); *Witcher v. State,* 258 Ga. App. 430, 431-432 (1) (574 SE2d 455) (2002).

And the evidence supports the trial court's determination that the pat-down was permissible, which led to the discovery of the revolver in A. P.'s pocket. This discovery gave Officer Jones probable cause to arrest A. P. "In the context of a second-tier encounter, an officer may conduct a pat-down search of a person whom he reasonably believes to be armed or otherwise dangerous to the officer or others." *Bradley v. State,* 322 Ga. App. 541, 548 (3) (c) (745 SE2d 763) (2013) (citation omitted). See also *Davis v. State,* 232 Ga. App. 450, 451 (1) (501 SE2d 241) (1998) (officer who heard dispatch could stop defendant who was walking near hospital where dead body was found, question him, and pat him down when crime had just occurred, circumstances of crime were not known, and officer was trying to sort out the facts). Officer Jones testified that seeing the hard, heavy object in A. P.'s pocket prompted him to pat down A. P. to protect officer safety.

3. *Sufficiency of the evidence*.

A. P. argues that the state failed to carry its burden of proving that he was in possession of a handgun in violation of OCGA § 16-11-132. We disagree.

"When reviewing the sufficiency of evidence supporting a juvenile court's adjudication, we apply the same standard of review used in criminal cases. We view the evidence in favor of the juvenile court's adjudication to determine whether a rational trier of fact could have found beyond a reasonable doubt that a juvenile committed the acts charged." *In the Interest of A. A.,* 334 Ga. App. 37, 37-38 (778 SE2d 28) (2015) (citation omitted).

Immediately after denying the motion to suppress, the juvenile court conducted a hearing on the delinquency petition.[1] The state re-called Officer Jones, who testified about arriving at the scene, walking with A. P., and noticing a hard object in A. P.'s pocket. A. P. told Officer Jones that the object was a cell phone and repeated this claim when they reached the other officers. Officer Jones patted down A. P. and

---

[1]The evidence from the suppression hearing was not admitted at the trial on the delinquency petition, so we cannot consider it in determining whether the evidence sufficed to prove that A. P. possessed a handgun. See *In the Interest of W. B.,* 342 Ga. App. 277 n. 1 (801 SE2d 595) (2017).

8

"could obviously tell it was a revolver." A. P. was detained and what Officer Jones described as "a small-caliber revolver" was found in his pocket.

Although the complaint against A. P. charged him with possession of a pistol or revolver in violation of OCGA § 16-11-132, the statute in fact prohibits "any person under the age of 18 years to possess or have under such person's control a handgun." OCGA § 16-11-132 (b). OCGA § 16-11-125.1 (1) defines "handgun" to mean

> a firearm of any description, loaded or unloaded, from which any shot, bullet, or other missile can be discharged by an action of an explosive where the length of the barrel, not including any revolving, detachable, or magazine breech, does not exceed 12 inches; provided, however, that the term "handgun" shall not include a gun which discharges a single shot of 0.46 centimeter or less in diameter.

Officer Jones' testimony that the weapon was inside A. P.'s pocket and his description of the weapon as a "small-caliber revolver" was sufficient evidence from which the juvenile court could have found beyond a reasonable doubt that A. P. committed the crime charged. Cf. *In the Interest of A A.,* 334 Ga. App. at 39-40 (2) (evidence was insufficient to adjudicate juvenile delinquent for being in possession

9

of a handgun when sole witness identified weapon only as a "firearm," "weapon," and "gun").

4. *Venue*.

A. P. argues that the state failed to prove venue. We disagree.

We review

> a challenge to the sufficiency of the venue evidence just like we review a challenge to the evidence of [delinquency]: we view the evidence in a light most favorable to support the [adjudication] and determine whether the evidence was sufficient to permit a rational trier of fact to find beyond a reasonable doubt that the [alleged delinquent acts occurred] in the county where the [juvenile was charged].

*Worthen v. State*, __ Ga. __, __ (3) (a) (Case No. Sl8A1212, decided Jan. 22, 2019) (citation and punctuation omitted). Venue in delinquency proceedings is also proper in the county in which the juvenile resides. OCGA § 15-11-490 (a) (1). "Whether the state met its burden as to venue is a matter resting soundly within the purview of the [factfinder], and ambiguities in the trial evidence must be resolved by the [factfinder], not appellate courts." *Garza v. State,* 347 Ga. App. 335, 337 (1) (b) (819 SE2d 497) (2018) (citations and punctuation omitted).

Officer Jones testified that he responded to a stolen-vehicle dispatch; that he arrived at the scene (the location where the vehicle or vehicles reportedly had been stolen); and that he saw A. P. at that location. He also testified that the vehicle had been stolen "out of DeKalb County." From this testimony, the juvenile court could have concluded that the delinquent act occurred in DeKalb County.

*Judgment affirmed. Rickman and Markle, JJ., concur.*